# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**WILLIAM JARVIS,**

   **Plaintiff,**

**vs.**                                   **Case No. 4:07cv111-MP/WCS**

**BUREAU OF ALCOHOL,**
**TOBACCO, FIREARMS,**
**and EXPLOSIVES**

   **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se*, sues the Bureau of Alcohol, Tobacco, and Firearms

(ATF, using the former acronym) for violations of the Freedom of Information Act, 5

U.S.C. § 552.  Doc. 16 (amended complaint).  The ATF has filed a motion to dismiss or,

alternatively, for summary judgment.  Doc. 29.  The motion is supported by a statement

of facts, doc. 30, and a memorandum, doc. 31.

Plaintiff's responsibilities in filing a response to a motion for summary judgment

were explained by order and a date was set for taking the motion under advisement.

Doc. 37.  Plaintiff filed a response to Defendant's motion.  Doc. 41.  He had earlier filed an "objection," doc. 32, which will be considered.

Plaintiff has also filed an amended motion for summary judgment.  Doc. 38. Plaintiff's motion for summary judgment is supported by an affidavit, doc. 41, exhibits (filed as three appendices, docs. 35, 36, and 43), a memorandum, doc. 39, and a statement of facts, doc. 42.  A date for taking the Plaintiff's motion under advisement was set.  Doc. 44.  Defendant has not filed a response.

Both motions are now ready for adjudication.  Defendant's motion for summary judgment will be considered first.  Plaintiff's motion for summary judgment and related exhibits will be considered with respect to Defendant's motion.  Then Plaintiff's motion for summary judgment will be considered.

**Allegations of the amended complaint, doc. 16**

Plaintiff alleges that on August 17, 2006, he sent a Freedom of Information Act (FOIA) request to the ATF.  Doc. 16, p. 2 and Ex. A, doc. 16, p. 7.  The documents pertain to a criminal investigation conducted by the ATF and state law enforcement officials regarding a fire in Jacksonville, Florida, on January 6, 2001.  *Id.*, p. 2.  Plaintiff was criminally prosecuted in state court for an offense connected with this fire, and is currently serving a state criminal sentence.[1]  *Id.*

---

[1] It is noted as background information that the title of the investigation in Defendant's records is "the Lillian Jarvis bombing."  E.g., doc. 16, pp. 18, 20.  Plaintiff was convicted of first degree murder of his former wife and first degree arson.  Doc. 30-2, p. 5, declaration of Averill P. Graham. The records indicate that Plaintiff "made an improvised explosive device (IED) and used the IED to knowingly cause[] the death of Lillian JARVIS . . . ."  Doc. 16, p. 32.  Plaintiff contends that he did not commit the offense.  Doc. 40, p. 2.  He is seeking these records to pursue post-conviction motions. *Id.*, p. 4.

The request was received by the ATF on August 24, 2006.  *Id.* and Ex. B (receipt), doc. 16, p. 10.  In this request, Plaintiff informed the ATF that this was "a repeat of a request mailed several weeks ago, which has gone unanswered."  Doc. 16, p. 7.  Plaintiff asked for "copies of all reports, filed field notes laboratory results, interview reports and notes, and any similar documents."  *Id.*, p. 8.  He then "especially" asked for the reports filed under case number 767010-01-0033 numbered 5, 7, 8, 11, 17, 28, 33, 34, 35, 38, 46, 47, and 48.  *Id.*  He also asked for "the reports authored by Robert Reed, Joseph Hanlin, Robert Valentino, Sherry Thomas, Andy McIntyre and all other lab personnel from the agency's Atlanta offices."  *Id.*

Plaintiff contends that Defendant has willfully failed to provide documents that he has sought under the Freedom of Information Act.  Doc. 16, p. 4.  He also alleges that Defendant has unreasonably redacted documents that were provided, relying upon the exemption of 5 U.S.C. § 551(b)(7(C).  *Id.*  Plaintiff contends that the exemption relied upon, to protect the privacy of other persons, no longer has application because the names of those persons were revealed in state records pursuant to the Florida Public Records Act, ch. 119, FLA. STAT.  *Id.*, p. 4.  Plaintiff seeks to have the records delivered to him.  *Id.*, p. 35.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986).  If it does so, the burden shifts to the Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  Plaintiff must show

more than the existence of a "metaphysical doubt" regarding the material facts,

Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is insufficient.

There must be such evidence that a jury could reasonably return a verdict for the party

bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S.Ct.

2505, 2512, 91 L.Ed.2d 202 (1986).  An issue of fact is "material" if it could affect the

outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256,

1259 (11th Cir. 2004) (citations omitted).  However, "the evidence and inferences drawn

from the evidence are viewed in the light most favorable to the nonmoving party, and all

reasonable doubts are resolved in his favor."  WSB-TV v. Lee, 842 F.2d 1266, 1270

(11th Cir. 1988); Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999) ("We

are required to resolve all reasonable inferences and facts in a light most favorable to

the nonmoving party.").

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by

her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v.

Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting*

Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The

nonmoving party need not produce evidence in a form that would be admissible as Rule

56(e) permits opposition to a summary judgment motion by any of the kinds of

evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477

U.S. at 324, 106 S. Ct. at 2553.

A claimant may move for summary judgment, with or without supporting affidavits, upon all or any part of his or her claim.  Fed.R.Civ.P. 56(a).  Summary judgment shall be granted on the motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "A claimant is entitled to a summary judgment only when no genuine issue of material fact exists, the papers on the motion demonstrate his right to relief, and every one of the defenses asserted legally are insufficient."  10A C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure § 2734, at 405 (1983).  The motion should be denied if there is a fact issue as to any defense raised.  *Id.*, at 406; United States v. Carter, 906 F.2d 1375, 1377 (9th Cir. 1990) (citing § 2734).  A "genuine issue" requires that there be such evidence that a reasonable jury could return a verdict for the party seeking summary judgment.  Anderson v. Liberty Lobby, Inc., *supra*.

## The evidence of record

Defendant has presented the declaration of Averill P. Graham, Chief, Disclosure Division, for the ATF.  Doc. 45-2, p. 1.[2]  Mr. Graham states that he receives all FOIA requests directed to the ATF, and he reviews all requests to other agencies who have located "ATF-originated documents in their records while processing FOIA . . . requests."  *Id.*  Mr. Graham is responsible for processing all FOIA requests, initiating

---

[2] This affidavit was originally filed as an attachment to document 30, document 30-2, but two pages were missing.  Therefore, the complete affidavit (document 45) will be referenced here.

searches relevant to such requests, and "supervising the determination of what records should be disclosed."  *Id.*

As already noted, Mr. Graham focuses entirely upon Plaintiff's first FOIA request dated June 16, 2006.  On June 16, 2006, Plaintiff submitted his initial FOIA request.  *Id.*, doc. 45-2, p. 2; doc. 30-4, pp. 1-3.  In that request, Plaintiff asked for the following documents:

A.    Index or Summary of all known agency/bureau reports, narratives, informal notes, affidavits, statements, subpoenas, search warrants, transcripts, correspondence, or similar documents related to the investigation of the explosion and fire at 5152 Brompton Court, Jacksonville Fl on 6 January 2001.  NOTE: This request is <u>not</u> for a copy of all . . . these documents, which would be an extensive quantity of pages. This is a request for an <u>index</u>.

B.    Reference case number 767010-01-0033 filed with RAC Williams's approval, please send me copies of reports # 5, 7, 8, 11, 17, 28, 33, 34, 35, 46, 47, 48 and 49.

C.    Please send me copies of the laboratory reports by S/As Reed, Valentino, McIntyre, and Thomas, as well as any and all reports or summaries by S/A Joe Hanlin . . . all from the Atlanta Ga offices.

Doc. 30-4, pp. 1-2.

There was a second FOIA request, however, received by the ATF on August 24, 2006.  That request stated: "This letter is a repeat of a request mailed several weeks ago, which has gone unanswered.  This version is being sent by certified mail in order to confirm its delivery."  Doc. 16, p. 7.  It is concluded from the first sentence that Plaintiff intended to seek essentially the same documents as were sought by the June 16, 2004, request.  The August 24th request sought the following documents: (1) "copies of all reports, filed field notes laboratory results, interview reports and notes, and

any similar documents;" (2) the reports filed under case number 767010-01-0033 numbered 5, 7, 8, 11, 17, 28, 33, 34, 35, 38, 46, 47, and 48; and (3) "the reports authored by Robert Reed, Joseph Hanlin, Robert Valentino, Sherry Thomas, Andy McIntyre and all other lab personnel from the agency's Atlanta offices."  Doc. 16, p. 8; doc. 40 (Plaintiff's affidavit), p. 5 and Exhibits A and B to doc. 35 (doc. 35, pp.5-8).  This was, however, slightly different from the June 16th request as document numbered 38 was added to the list.  Further, the first sentence arguably describes a broader universe of documents than the June 16th request.

This renewed FOIA request was signed for as received by "ALS" on August 24, 2006.  Doc. 35, Ex. B, p. 8.  This may be "April Sands," a "Disclosure Assistant," who signed for another letter that Plaintiff sent on August 1, 2007, and sent Plaintiff an undated letter acknowledging receipt of another FOIA request received on November 7, 2006.  Doc. 35, Exs. S and T, pp. 36, 32-35; doc. 30-4, p. 8.  The address on this mail receipt notice and the letter itself was 650 Massachusetts Avenue, N.W., Washington, D.C. 20226.  This is the address that Plaintiff repeatedly used to correspond with Mr. Chisholm, a senior disclosure specialist for the ATF.  The second line said "Freedom of Information (FOIA) Request."  Doc. 35, Ex. B, p. 8.  Defendant has *not disputed* that it received this second FOIA request on August 24, 2006.

According to Mr. Graham, the initial request was denied by letter dated September 21, 2006, from Peter J. Chisholm pursuant to exemption (b)(7)(A), which pertains to "investigatory records compiled for law enforcement purposes, the production of which could interfere with enforcement proceedings."  Doc. 45-2, p. 2; Ex. B, doc. 30-4, p. 4.  Mr. Chisholm notified Plaintiff of his right to appeal and the

procedures for an appeal.  *Id.*  Plaintiff was also told that as an alternative to an appeal, Plaintiff could wait until "all judicial proceedings related to your request have been completed," and could resubmit his request.  *Id.*

Plaintiff's conviction was affirmed by the Florida First District Court of Appeal on December 22, 2005.  Jarvis v. State, 922 So. 2d 198 (Table) (case no. 1D03-5498). Plaintiff's petition for writ of certiorari in the United States Supreme Court was denied on October 2, 2006.  Jarvis v. Florida, 127 S.Ct. 112, 166 L.Ed.2d 86 (Oct 2, 2006, Case No. 05-11326).

Plaintiff resubmitted his FOIA request on December 7, 2006, noting that "all judicial proceedings" were completed with the denial of certiorari.  Doc. 30-4, p. 5.  By this time, however, Plaintiff had also filed an administrative appeal from the September 21, 2006, letter from Peter J. Chisholm applying exemption (b)(6)(A).  *Id.*, pp. 6-7.

On December 12, 2006, in response to the December 7th resubmitted FOIA request, Plaintiff was notified that his request was "granted in part" and a full response was expected on January 31, 2007.  Doc. 30-4, p. 9.  On January 3, 2007, the appeal concerning the September denial of the June 16th FOIA request was remanded for "further processing," noting that the exemption for interference with law enforcement proceedings no longer applied.  *Id.*, p. 11.

On February 8, 2007, Plaintiff made a request for an expedited response under subsection (a)(6)(E) of the Act.  *Id.*, p. 12.  Plaintiff filed suit on March 16, 2007.  Doc. 1. Plaintiff bases his suit upon the August 24, 2006, renewed FOIA request, and has not argued any issues relating to the December 7, 2006, request.

On June 14, 2007, the ATF sent 15 documents consisting of 33 pages to Plaintiff. Doc. 39, p. 4.  Those documents are Exhibits H, I, and J to document 35.  *Id.*

Exhibit H contains a section entitled "Report of Investigation" which contains an index of report numbers 1 through 49, skipping numbers 2, 7, 18, 28, 33-35, and 45. Doc. 35, pp. 11-12.  It is heavily redacted.  There are several other lists as well in this exhibit.

Exhibit I is report of investigation 17, submitted on January 18, 2001.  Doc. 35, p. 13.  It is a report of an interview on January 9, 2001, apparently at Plaintiff's place of employment since it provides information concerning Plaintiff's work habits.  *Id.*  It is heavily redacted.

Exhibit J is report of investigation 8 submitted on January 12, 2001.  Doc. 35, pp. 14-16.  It reports an interview of a person, but the name of the interviewer and the person interviewed, and all 11 paragraphs of the report of the interview, are redacted. *Id.*

Plaintiff reports in his memorandum in support of his own motion for summary judgment that Exhibit H is the index.  Doc. 39, p. 8.  Exhibits I and J are examples of eight ATF Forms EF 3120.2, "Report of Investigation," numbered 5, 8, 11, 17, 46, 47, 48, and 49, that were provided to him.  *Id.*  Plaintiff states that he was also provided three ATF Forms F 7120.7C, "Evidence Transmittal Form," and cites Exhibits N and O, in document 35, as examples.  *Id.*  Plaintiff represents that he also received two ATF Forms F 7100.2, "Laboratory Report, and 1 ATF Form F 3324.1, "Statement of Explosives Technology Branch," but apparently copies of those documents were not included in his appendices (docs. 35, 36, and 43) as exhibits.  Plaintiff states that if

these documents were in response to his first FOIA request dated June 16, 2006, "the Agency's response seems adequate."  Doc. 39, p. 9.  But he argues that this fails to respond to his second FOIA request received by the ATF on August 24, 2006.  *Id.*, pp. 9-10.

On July 6, 2007, Plaintiff wrote the ATF, contending that the documents that were sent in June were not adequately responsive to his second FOIA request dated August 17, 2006, and received on August 24, 2006.  Doc. 30-4, p. 16.

On August 1, 2007, Plaintiff wrote another letter to the ATF.  Doc. 35, Ex. S, p. 32; doc. 40, p. 6.  This was directed to the ATF office in Northern Virginia.  *Id.*  Plaintiff did not seek the documents, but sought only an index.  Doc. 35, p. 34.  The records he inquired about pertained to America Online (AOL).  *Id.*, pp. 33-34.

Plaintiff states in his affidavit that at least eighteen ATF agents worked on his case, and it is reasonable to believe that each documented his or her work.  Doc. 40, p. 7.  He provides the names.  *Id.*  He states that these agents worked from offices in Jacksonville, Florida, Atlanta, Georgia, California, and Virginia.  *Id.*  Plaintiff explains that evidence was analyzed by the ATF in laboratories near Atlanta, Georgia.  *Id.*, p. 3.  He also states that ATF agents in Northern Virginia obtained records from America Online (AOL).  *Id.*  Plaintiff believes that between 60 and 100 documents still exist that have not been disclosed and could be in those four locations.  *Id.*, pp. 7-8.

Mr. Graham states in his affidavit that the first step in the documents search in response to Plaintiff's FOIA request was to "query the TECS."  Doc. 45-2, p. 10.  This is a text database used by the ATF, Customs, and Homeland Security, containing "information that may be of interest to law enforcement agencies."  *Id.*  TECS is also a

communications system, and allows the ATF to send messages to federal, state, and local law enforcement agencies.  *Id.*  TECS provides access to the National Crime Information Center (NCIC), the National Law Enforcement Telecommunications System (NLETS), and is used to find local records within the Department of Justice's Privacy Act system of records entitled "Criminal Investigation Report System."  *Id.*  TECS contains ATF records that include wanted persons and fugitives, known and suspected violators of laws falling with the jurisdiction of the ATF, felons, violent felons, gangs, and terrorists.  *Id.*  Within TECS are seven categories of records:  persons, businesses, aircraft, firearms, vehicles, vessels, and things.  *Id.*  A query to the ATF will reveal an ATF investigation number that corresponds to "a specific field division where any files would be located."  *Id.*  Mr. Graham reasons that "because the TECS database contains the names of the individuals ATF has investigated, it was the place most likely to locate responsive records."  *Id.*, pp. 10-11.  Mr. Graham states that using Plaintiff's full name, all records related to him were located in the ATF Tampa Field Division under Criminal Investigation Number 767010-01-0033.  *Id.*, p. 11.  This is the same case number as identified by Plaintiff in his June 16th and August 24th requests.  The Disclosure Division, which Mr. Graham supervises, asked the Tampa Field Division to search "all criminal case files within their office that were retrievable" by Plaintiff's full name and that investigation number.  *Id.*  The Tampa Field Division informed Mr. Graham that it provided all records responsive to Plaintiff's FOIA request.  *Id.*

Mr. Graham states that the ATF sent to Plaintiff copies of "Reports of Investigation" numbers 5, 8, 11, 17, 46, 47, 48, and 49, and that there "is no evidence of the existence of" Reports numbers 2, 7, 28, 33, 34, and 35.  Doc. 45-2, p. 9.  Oddly,

though, although Mr. Graham makes reference to Exhibit A to his affidavit as the "subject of the current litigation," *id.*, and Exhibit A is the June 16th request (filed as doc. 30-4, p. 1), Mr. Graham also acknowledges that Plaintiff seeks a copy of document 38. Doc. 45-2, p. 9.  Mr. Graham could only have mentioned document 38 if had he been looking at the August 24th request because the June 16th request did not seek a copy of document 38.

**Legal analysis of Defendant's motion for summary judgment**

"The FOIA is 'primarily an access and disclosure statute.'  1984 U.S.CODE CONG. & AD.NEWS at 3789.  It provides for wide-ranging citizen access to government documents and presumes them subject to disclosure absent a clear showing to the contrary."  Ely v. F.B.I., 781 F.2d 1487, 1489 (11th Cir. 1986) (citations omitted).  A person need not have a reason to obtain access to records under the Freedom of Information Act:

> A person requesting the information needs no preconceived idea of the uses the data might serve.  The information belongs to citizens to do with as they choose.  Furthermore, as we have noted, the disclosure does not depend on the identity of the requester.  As a general rule, if the information is subject to disclosure, it belongs to all.

National Archives and Records Admin. v. Favish, 541 U.S. 157, 172, 124 S.Ct. 1570, 1580, 158 L.Ed.2d 319 (2004).

"Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified."  Miccosukee Tribe of Indians of Florida v. United States, 516 F.3d 1235, 1243 (11th Cir. 2008), *quoting*, Miscavige v. I.R.S., 2 F.3d 366, 369 (11th Cir.1993).

**Exhaustion of administrative remedies**

Exhaustion of administrative remedies is a condition precedent to filing a Freedom of Information Act suit.  Taylor v. Appleton, 30 F.3d 1365, 1367-1368 (11th Cir. 1994).  A failure to exhaust does not deprive the court of jurisdiction, but if exhaustion is not alleged, the complaint fails to state a claim upon which relief may be granted.  *Id.*, at 1368 n.3.  Defendant does not contend that Plaintiff failed to exhaust administrative remedies.

**Adequacy of the agency's search**

Agencies must make "more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents."  Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999).  To be entitled to summary judgment, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby, 920 F.2d at 68.  Likewise, the Eleventh Circuit has held that "the agency must show beyond a material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents."  Miccosukee Tribe, 516 F.3d at 1248, *quoting,* Ray v. U.S. Dep't of Justice, 908 F.2d 1549, 1558 (11th Cir.1990).

However, "[u]nder this standard, the agency need not show that its search was exhaustive."  Ray, 908 F.2d at 1558, *rev'd on other grounds*, 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991).  In Oglesby, the court said that while "[t]here is no requirement that an agency search every record system," "the agency cannot limit its

search to only one record system if there are others that are likely to turn up the information requested."  *Id*.  The court found:

> The affidavit does not show, with reasonable detail, that the search method, namely searching the Central Records, was reasonably calculated to uncover all relevant documents.  Nor does the affidavit identify the terms searched or explain how the search was conducted.

*Id*.  The court concluded, therefore, that the agency was not entitled to summary judgment because it had not shown that its search was a good faith effort to find records.  *Id*.  Similarly, <u>Valencia-Lucena v. U.S. Coast Guard</u>, 180 F.3d 321 (D.C. Cir. 1999) held that a search may be shown to have been inadequate if "the record itself reveals 'positive indications of overlooked materials.' " 180 F.3d at 327 (case quoted omitted).

Plaintiff concedes that the ATF's search in the TECS database for records responsive to his June 16, 2006, FOIA request appears to have been reasonable.  Doc. 39, p. 9.  He argues, however, that Defendant has not adequately searched for documents sought by the August 24th request.  *Id*., pp. 9-10.  He argues that the August 24th request sought "copies of <u>all</u> reports, filed field notes, laboratory results, interview reports and notes, <u>and any similar documents</u>."  *Id*., p. 10 (emphasis by Plaintiff).  Exhibit H to document 35, however, was provided to Plaintiff and is the "index" sought in the June 16, 2006, request.

It must be emphasized again that the request dated June 16th was somewhat different when compared to the August 24th request.  The June 16th request sought:

> Index or Summary of all known agency/bureau reports, narratives, informal notes, affidavits, statements, subpoenas, search warrants, transcripts, correspondence, or similar documents related to the investigation of the explosion and fire at 5152 Brompton Court, Jacksonville Fl on 6 January 2001.  NOTE: This request is <u>not</u> for a copy

of all . . . these documents, which would be an extensive quantity of pages.  This is a request for an <u>index</u>.

Doc. 30-4, pp. 1-2.  Exhibit H, as compiled by the NFORCE Forms Explorer, is a list or index of the "all" of the reports sought by the August 24th request.  If the documents listed in Exhibit H were provided to Plaintiff or found to be non-existent, then Defendant has shown diligence in responding to the August 24th request.

Plaintiff argues Exhibit H is a not reliable inventory of all of the documents that might exist.  He argues that while Exhibit H lists about 65 documents, of the 14 documents provided to him, six were not listed.  Doc. 39, pp. 10-11.  Plaintiff does not, however, argue that Defendant did not diligently search for the documents that *are* on this index.  Instead, he argues that there *might* be more not listed on the index since he received six that were not listed on the index.  Plaintiff has not identified the "off the list" documents, and, therefore, this is not a "positive indication of overlooked documents."  The documents must be identified by Plaintiff before Defendant can determine where those documents came from, and why they are not listed on the Exhibit H index.

Plaintiff also argues that "Evidence Transmittal Forms" mention attachments that were not included in disclosures he received.  For this argument Plaintiff cites exhibits N and O to document 35.  Doc. 39, p. 11.  Defendant argues that this shows that the NFORCE Forms Explorer index, Exhibit H, is not reliable.  *Id.*  Exhibit N dated January 16, 2001, transmitted bomb debris and clothing (items 1 through 6), not documents.  Doc. 35, p. 20.  There was no document attached to that transmittal.  Exhibit O, however, indicates that an ATF F 3400.15 was attached.  *Id.*, p. 21.  It will be assumed that Plaintiff did not receive this one ATF F 3400.15 form, but this default, standing alone, does not show that Defendant did not conduct an adequate search for

documents.  As noted above, the search does not have to have been exhaustive to have been sufficient.

It is also noted that the August 24th request also asked for "the reports authored by Robert Reed, Joseph Hanlin, Robert Valentino, Sherry Thomas, Andy McIntyre and *all other lab* personnel from the agency's Atlanta offices."  *Id.* (emphasis added). The June 16th request sought "copies of the *laboratory reports* by S/As Reed, Valentino, McIntyre, and Thomas, as well as any and all reports or summaries by S/A Joe Hanlin . . . all from the Atlanta Ga offices."  Doc. 30-4, pp. 1-2 (emphasis added).  It would appear that the August 24th sought the same lab reports as sought by the June 16th request.  However, since Plaintiff has not made any argument about this aspect of his FOIA requests, it is not at issue here.

Plaintiff also argues that the search was inadequate because ATF agents from offices other than Tampa, Florida, worked on the case.  Doc. 34, p. 7.  That is accepted as true, but there is no evidence that those agents retained any documents that were not also filed in the central file in the Tampa office.  This is not a "positive indication of overlooked documents."

In summary, therefore, Defendant has shown that it conducted a reasonable search, under the circumstances, for the all of the documents related to the ATF criminal investigation.  Plaintiff cannot fault Defendant for the reasonableness of the search when the confusion generated by Plaintiff's FOIA requests, if any, is of his own doing.  Plaintiff changed the wording when he sent his second letter, yet he said in that August 24th letter that this was "a repeat of a request mailed several weeks ago, which has gone unanswered."  Doc. 16, p. 7.  Defendant has shown that those documents are

listed in the index, Exhibit H, and should reside, if they exist at all, in the Tampa office.

The search was adequate.

### The privacy exemptions in law enforcement records

At issue in this case is exemption (b)(7)(C).  5 U.S.C. § 551(b)(7) provides:

**(b)** This section does not apply to matters that are –

     *      *      *

**(7)** records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) *could reasonably be expected to constitute an unwarranted invasion of personal privacy*, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

5 U.S.C. § (b)(7) (emphasis added).

"The Act's disclosure provisions are read broadly, its exemptions narrowly."  <u>Ely v. F.B.I.</u>, 781 F.2d at 1489.  "[A]n agency has the burden of proving that it properly invoked any FOIA exemptions when it decided to withhold information."  <u>Miccosukee Tribe</u>, 516 F.3d at 1258, *citing*, <u>Ely</u>, 781 F.2d at 1489-1490).  "[T]he agency may rely on affidavits (in lieu of a *Vaughn*[3] Index) to meet its burden so long as they provide an

---

[3] <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).  "This is a detailed index showing justification for withholding each document."  <u>Miscavige</u>, 2 F.3d at 367.

adequate factual basis for the district court to render a decision."  *Id.*, *citing*, Miscavige

v. I.R.S., 2 F.3d at 368.  "[A]ffidavits can be sufficient for summary judgment purposes

in an FOIA case if they provide as accurate a basis for decision as would sanitized

indexing, random or representative sampling, in camera review, or oral testimony."

Miscavige, 2 F.3d at 368.

The first step to show the existence of the (b)(7) exemption is to show that the

"records or information [were] compiled for law enforcement purposes."  There is no

dispute that the records sought here were gathered for "law enforcement purposes."

The right to personal privacy is not confined to the right to control information

about oneself.  National Archives and Records Admin. v. Favish, 541 U.S. at 165, 124

S.Ct. at 1576.  Congress intended that the term "personal privacy" extend to family

members.  541 U.S. 167, 124 S.Ct. at 1578.  Further, "the statutory privacy right

protected by Exemption 7(C) goes beyond the common law and the Constitution."  541

U.S. at 170, 124 S.Ct. at 1579.

> Law enforcement documents obtained by Government investigators often
> contain information about persons interviewed as witnesses or initial
> suspects but whose link to the official inquiry may be the result of mere
> happenstance.  There is special reason, therefore, to give protection to
> this intimate personal data, to which the public does not have a general
> right of access in the ordinary course.  *Id.*, at 773, 109 S.Ct. 1468.[4]  In
> this class of cases where the subject of the documents "is a private
> citizen," "the privacy interest . . . is at its apex."  *Id.*, at 780, 109 S.Ct.
> 1468.

541 U.S. at 166, 124 S.Ct. at 1577.

---

[4] United States Dept. of Justice v. Reporters Comm. for Freedom of the Press,
489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

The Eleventh Circuit addressed these privacy interests in L & C Marine

Transport, Ltd. v. U.S., 740 F.2d 919 (11th Cir. 1984).  In that case, employees and

managers of Plaintiff, a corporation, were interviewed by the Occupational Safety and

Health Administration (OSHA).  OSHA released most of its investigatory file, but deleted

the names, addresses, and other identifying data regarding the employee witnesses to

the accident.  740 F.2d at 921.  Among the exemptions discussed in the opinion was

exemption (7)(C).  The district court had found no privacy interest because the names of

those "working aboard the ship" were known through discovery.  740 F.2d at 922.  The

Eleventh Circuit held that:

> *An individual does not lose his privacy interest under 7(C) because his*
> *identity as a witness may be discovered through other means.*  The
> employee-witnesses in this case have a substantial privacy interest in this
> case as disclosure *would lead to the type of harm, embarrassment and*
> *possible retaliation* that 7(C) was created to prevent.

740 F.2d at 923 (emphasis added).  The court said that the privacy interest at stake

includes "possible adverse effects upon himself or his family."  *Id.*

Defendant has demonstrated without dispute that the witnesses who were

interviewed, and the ATF agents and employees who were involved in conducting the

investigation into the death of Plaintiff's former wife, have significant privacy interests in

their names and the details of their statements.  Plaintiff has been convicted of killing his

former wife with a pipe bomb.  The means chosen to commit this murder were remote

rather than direct, and required a considerable degree of intelligence and planning.  If

the names and specifics of those who gave evidence in the investigation were revealed

by disclosure of these documents, those witnesses and the agents and employees of

the ATF could be at risk of further impassioned acts of retaliation directed by Plaintiff

through the agency of others, even though he is now in prison, or could be subjected to unnecessary fear of such retaliation.

It has not gone unnoticed that Plaintiff attached to his amended complaint a completely unredacted copy of Exhibit H, the NFORCE Forms Explorer index and another unredacted list of 45 documents submitted "in support of prosecution," describing the content of the documents and the names of witnesses.  Doc. 16, pp. 30-37.  The privacy interests at stake, however, are not diminished by these disclosures that presumably occurred in the course of Plaintiff's criminal trial.  L & C Marine,740 F.2d at 923.  A document previously disclosed may have "practical obscurity" and might not again become public without a diligent search.  As a consequence, the individual privacy exemption in the FOIA is not necessarily vitiated by prior disclosures.  Fiduccia v. United States Dept. of Justice, 185 F.3d 1035, 1047 and ns. 40-44 (9th Cir. 1999) (citing United States Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)).  "Confidentiality interests cannot be waived through prior public disclosure or the passage of time."  Halpern v. F.B.I., 181 F.3d 279, 297 (2nd Cir. 1999).  Cf., Sherman v. U.S. Dept. of Army, 244 F.3d 357 (5th Cir. 2001):

> The Supreme Court has explained that the privacy interest at stake in FOIA exemption analysis belongs to the individual, not the agency holding the information.  Reporter's Comm., 489 U.S. at 763-65, 109 S.Ct. 1468. Moreover, as noted, the fact that otherwise private information at one time or in some way may have been placed [in] the public domain does not mean that a person irretrievably loses his or her privacy interest in the information.  Id. at 770, 109 S.Ct. 1468; Halloran, 874 F.2d at 322. Consistent with these established principles, we hold that only the individual whose informational privacy interests are protected by exemption 6 can effect a waiver of those privacy interests when they are threatened by an FOIA request.

244 F.3d at 363-364.  An individual's privacy interest may, of course, be waived by the individual.  Computer Professionals for Social Responsibility v. United States Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996).  That the individual testified in a public trial, however, is not necessarily a waiver.  Kiraly v. F.B.I., 728 F.2d 273, 279-280 (6th Cir. 1984).

In summary, Defendant has demonstrated a privacy interest in names and identifying information that is recognized by exemption 7(C).  Once it is found that the privacy interest asserted is within the exemption, a balancing of interests must follow.

> Although this privacy interest is within the terms of the exemption, the statute directs nondisclosure only where the information "could reasonably be expected to constitute an unwarranted invasion" of the family's personal privacy.  The term "unwarranted" requires us to balance the family's privacy interest against the public interest in disclosure.  *See Reporters Committee*, 489 U.S., at 762, 109 S.Ct. 1468.

541 U.S. at 171, 124 S.Ct. at 1580.  *See also,* Ely, 781 F.2d at 1490 (citations omitted).

The person seeking disclosure of the information must show that disclosure will advance a significant public interest:

> [T]he exemption requires the person requesting the information to establish a sufficient reason for the disclosure.  *First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake.*  Second, the citizen must show the information is likely to advance that interest.  Otherwise, the invasion of privacy is unwarranted.

541 U.S. at 172, 124 S.Ct. at 1580-1581 (emphasis added).  Often that public interest is "in uncovering deficiencies or misfeasance in the Government's investigations."  541 U.S. at 173, 124 S.Ct. at 1581.

> [W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain

disclosure.  Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

*Id*.  There is a "presumption of legitimacy accorded to the Government's official conduct."  *Id*.  "[C]lear evidence is usually required to displace it."  *Id*.  When the significant asserted public interest is to uncover Government misfeasance, there must be a "meaningful evidentiary showing."  541 U.S. at 174, 124 S.Ct. at 1582.  Only when that showing has been made "will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests."  541 at 174-175, 124 S.Ct. at 1582.

Plaintiff has not come forward with evidence to show that a significant public interest will be advanced by disclosure.  He seeks the documents to pursue a post-conviction motion, but he has not shown how any particular document would reveal Government misfeasance or would somehow further a similar public interest.  As a consequence, Plaintiff has presented no public interest to balance against the privacy interests that have been shown.  Therefore, the court should sustain the ATF's assertion of these privacy interests.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendant's motion for summary judgment, doc. 29, **be GRANTED**, and that Plaintiff's motion for summary judgment, doc. 38, **be DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 4, 2008.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.